ELIZABETH G. CURTIS & others[1] *vs.* SCHOOL COMMITTEE
OF FALMOUTH & others.[2]

Barnstable. March 7, 1995. - July 17, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Practice, Civil,* Summary judgment. *Education,* Role of courts. *School and School Committee,* Condom-availability program. *Constitutional Law,* Education, Privacy, Parent and child, State action, Freedom of religion. *Privacy. Parent and Child,* Interference with parental rights. *Religion.*

A Superior Court judge properly decided a case on a motion for summary judgment where there were no material facts at issue. [753-754]

Definition of the role of the courts with respect to the administration of public education. [754-755]

Plaintiffs in a civil action, parents of students attending public high school or junior high school in a certain municipality, did not demonstrate that a condom-availability program in the schools burdened in an unconstitutional manner, i.e., had a coercive effect on, their fundamental liberty interest to be free from unnecessary governmental intrusion in the rearing of their children or on familial privacy, where the students were free to decline to participate in the program; therefore neither an opt-out provision nor parental notification of student participation in the program was required. [755-760]

Plaintiffs in a civil action, parents of students attending public high school or junior high school in a certain municipality, did not demonstrate sufficient facts to support their argument that a condom-availability program in the schools substantially burdened their free exercise of their religion in violation of the First Amendment to the United States Constitution, where there was no requirement that students participate in the program. [760-763]

---

[1]Carol Curtis, Kristen Jenkinson, Eileen F. McDevitt, Daniel MacLone, Nancy MacLone, Eugene Bradeen, Alice Bradeen, Bryan Peltzer, Beverly Peltzer, and Edward Peltzer.

[2]The superintendent of the Falmouth public schools, the principal of Falmouth High School, and the principal of the Lawrence Junior High School. The principals were sued in their official and individual capacities.

CIVIL ACTION commenced in the Superior Court Department on May 22, 1992.

The case was heard by *Gerald F. O'Neill, Jr.,* J., on a motion for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Larry L. Crain,* of Tennessee (*Joseph C. Paruti* with him) for the plaintiffs.

*Edward T. Hinchey* (*Robert G. Eaton* with him) for the defendants.

*Catherine Weiss,* of New York, & *Sarah Wunsch,* for American Civil Liberties Union & others, amici curiae, submitted a brief.

*Scott Harshbarger,* Attorney General, & *Amy Spector,* Assistant Attorney General, for the Commonwealth, amicus curiae, submitted a brief.

*A. Van C. Lanckton, Darren R. Klein & Nancy Weissman,* for American Jewish Congress & another, amici curiae, submitted a brief.

LIACOS, C.J. The plaintiffs, students and parents of students in the Falmouth public school system, appealed from a grant of summary judgment in favor of the defendants, the school committee of Falmouth (school committee) and three individual defendants. We granted the school committee's application for direct appellate review. We affirm.

This case involves a program of condom availability established by the defendants in the junior and senior high schools of Falmouth. The plaintiffs brought this action against the defendants in response to the implementation of the program. They requested declaratory and injunctive relief under 42 U.S.C. § 1983 (1988), and G. L. c. 12, § 11I (1994 ed.), in the Superior Court, alleging violations of the their Federal constitutional rights. A judge in the Superior Court denied relief and granted the defendants' motion for summary judgment.[3]

---

[3]In addition to his denial of the plaintiffs' claims, the motion judge granted summary judgment in favor of the defendants on their request for

The plaintiffs alleged in their amended complaint, and now argue before this court, that the condom-availability program, as it stands, violates their right to familial privacy and their guaranteed liberties as parents in the control of the education and upbringing of their children, protected by the Fourteenth Amendment to the United States Constitution. They also argue that the program violates their right to free exercise of religion guaranteed by the First Amendment to the United States Constitution, art. 46, § 1, of the Amendments to the Massachusetts Constitution, and art. 2 of the Declaration of Rights of the Massachusetts Constitution.[4] The plaintiffs ask us to reverse the judge's entry of summary judgment for the defendants and to enjoin the school committee from continuing to make condoms available to students without the inclusion of a provision which would permit parents to opt out of the program and without a system of parental notification of their child's requests for a condom.

The motion judge set forth the facts as follows: "On January 2, 1992, following an authorizing vote of the FSC [Falmouth school committee], the Superintendent of Schools issued a memorandum to the teaching staff of grades 7 through 12, detailing the condom availability program. At Lawrence Junior High School, students could request free condoms from the school nurse. Prior to receiving them, students would be counseled. The nurse was also instructed to

declaratory judgments to establish that the defendants' conduct violated G. L. c. 274, § 3 (1994 ed.), and G. L. c. 265, § 23 (1994 ed.), by functioning as accomplices to statutory rape of or by the students, G. L. c. 119, § 51A (1994 ed.), by failing to report sexual abuse of students reasonably expected to occur based on students' use of condoms, and G. L. c. 71, § 30 (1994 ed.), the moral education statute. The plaintiffs do not argue these statutory claims on appeal and hence these claims are waived. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975). Instead, their argument focuses on their constitutional claims as discussed in the text of this opinion.

[4]Since the plaintiffs did not put their State constitutional claims before the judge in the Superior Court, we decline to consider them on appeal. See *Albert* v. *Municipal Court of the City of Boston*, 388 Mass. 491, 493-494 (1983), and cases cited. See also *Tate, petitioner*, 417 Mass. 226, 230 (1994).

give students pamphlets on AIDS/HIV and other sexually transmitted diseases. At Falmouth High School, students could request free condoms from the school nurse, or students could purchase them for $.75 from the condom vending machines located in the lower level boys' and girls' restrooms. Counseling by trained faculty members would be provided to students who requested it, and informational pamphlets were available in the [school] nurse's office. The Superintendent's memorandum instructed the staff to reserve their own opinions regarding condom availability in order to respect students' privacy. The memorandum also indicates that the Superintendent's presentation of the condom availability to the student body would stress abstinence as the only certain method for avoiding sexually transmitted diseases. The condom availability program took effect on January 2, 1992.

"The FSC condom program does not provide for an 'opt out' for students' parents whereby the parents have the option of excluding their student child from the availability of condoms. Nor is there a parental notification provision in the FSC program by which parents would be notified of their children's requests for condoms.

"Because no high school currently exists in the town of Mashpee, Mashpee residents attend Falmouth High School pursuant to a five-year contract between the Mashpee and Falmouth school committees. The contract does not provide for Mashpee residents to vote in the elections of FSC members. The contract does not prohibit the Mashpee School Committee (MSC) from entering into a similar contract with other neighboring schools or school committees. On September 20, 1992, the MSC voted 4-1 to object to the FSC condom availability program. Pursuant to the contract between the FSC and the MSC, this vote was not binding on the FSC." (Footnote omitted.)

The judge concluded that the plaintiffs had failed to meet the threshold requirement for each of their claims because they were unable to demonstrate that the condom-availability program placed a coercive burden on their rights. The

plaintiffs argue that they were not required to show coercion in order to survive the summary judgment motion. They further argue that, even if coercion is the proper standard, the program meets that standard. Thus, they argue, the State was required to prove the existence of a compelling State interest in maintaining the condom-availability program.

As we shall discuss in more detail below, the condom-availability program in Falmouth is in all respects voluntary and in no way intrudes into the realm of constitutionally protected rights. Because no threshold demonstration of a coercive burden has been made, nor could have been made on these facts, the defendants properly were granted summary judgment.[5]

In reviewing a grant of summary judgment, we examine whether all material facts have been established and whether the moving party is entitled to judgment as matter of law. We view the evidence in the light most favorable to the nonmoving party. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). See *Judson* v. *Essex Agric. & Technical Inst.*, 418 Mass. 159, 162 (1994); *McDonough* v. *Marr Scaffolding Co.*, 412 Mass. 636, 638 (1992). "[A] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in Mass. R. Civ. P. 56 (c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." *Judson* v. *Essex Agric. & Technical Inst., supra,* quoting *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991).

The plaintiffs dispute the judge's conclusion that there were no material facts at issue. They point to affidavits filed with the court which allegedly contravene the defendants' underlying rationale for implementing the program. These affidavits contain expert opinions on the possible negative

---

[5]There is no need for further inquiry into the State's interest since we conclude the judge properly found no constitutional infringement.

repercussions of making condoms available to young people. An argument could be made that these expert opinions might be relevant to a determination of the State's interest in implementing the program against the plaintiffs' interest in their constitutionally protected rights. However, the judge found no infringement of the plaintiffs' rights and, thus, did not reach the stage of constitutional analysis which would have required him to examine the extent of the State's interest. *Doe* v. *Irwin*, 615 F.2d 1162, 1169 (6th Cir.), cert. denied, 449 U.S. 829 (1980). These affidavits involve considerations "not germane to the narrow constitutional issue presented." *Zorach* v. *Clauson*, 343 U.S. 306, 310 (1952). The issues before the judge were issues of law, i.e., whether the condom-availability program, the provisions of which are not in dispute, infringes on the rights of the plaintiffs to familial privacy, parental liberty, and free exercise of religion. We conclude that the judge properly decided the case on a motion for summary judgment. *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 374, cert. denied sub nom. *Bailey* v. *Bellotti*, 459 U.S. 970 (1982). We turn now to a review of the judge's determination of the issues. See *McNulty* v. *McDowell*, 415 Mass. 369, 370 (1993), and cases cited.

We begin our discussion by defining the role of the courts with respect to the administration of public education. Public education of children is unquestionably entrusted to the control, management, and discretion of State and local school committees. *Epperson* v. *Arkansas*, 393 U.S. 97, 104 (1968). *Grove* v. *Mead Sch. Dist. No. 354*, 753 F.2d 1528, 1533 (9th Cir.), cert. denied, 474 U.S. 826 (1985). See G. L. c. 72, § 37, wherein the Legislature explicitly delegates this authority to local school committees.

"Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." *Epperson* v. *Arkansas*, *supra*. Furthermore, courts must take caution before they order changes in educa-

tional programs adopted by duly chosen local authorities.[6] *Mozert* v. *Hawkins County Bd. of Educ.*, 827 F.2d 1058, 1070 (6th. Cir. 1987), cert. denied, 484 U.S. 1066 (1988). Obviously, "a State's interest in universal education . . . is not totally free from a balancing process when it impinges on fundamental rights and interests . . . ." *Wisconsin* v. *Yoder*, 406 U.S. 205, 214 (1972). Yet, in the absence of a direct and sharp implication of basic constitutional values, this dispute is not an issue for the courts. See *Lyng* v. *Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 452 (1988); *Wisconsin* v. *Yoder, supra* at 234-235.

1. *Parental liberty and familial privacy claim.* The plaintiffs argue that the condom-availability program violates their substantive due process rights, protected by the Fourteenth Amendment, to direct and control the education and the upbringing of their children. In the same vein, they argue that the program invades the constitutionally protected "zone of privacy" which surrounds the family. Further, they claim the program intrudes on these rights because it allows their minor children unrestricted access to contraceptives without parental input and within the compulsory setting of the public schools. They claim that in these circumstances parents have the right to intervene and prohibit their children from obtaining the condoms (by an opt-out provision in the program), and that they have a right to parental notification if their child requests and obtains a condom.

We agree that parents possess a fundamental liberty interest, protected by the Fourteenth Amendment, to be free from unnecessary governmental intrusion in the rearing of their children. See *Quilloin* v. *Walcott*, 434 U.S. 246, 255 (1978); *Wisconsin* v. *Yoder, supra* at 232-233; *Prince* v. *Massachusetts*, 321 U.S. 158, 166-167 (1944); *Pierce* v. *Society of Sisters*, 268 U.S. 510, 534-535 (1925); *Meyer* v. *Nebraska*, 262

---

[6]Here, the program was implemented after numerous town meetings and school committee meetings, culminating in a final vote of the school committee in favor of the program. The plaintiffs do not take issue with the validity of the political process by which the condom-availability program was approved.

U.S. 390, 401 (1923). We recognize that, "[t]he child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." *Pierce* v. *Society of Sisters, supra* at 535. "The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and the upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition." *Wisconsin* v. *Yoder, supra* at 232. See *Ginsberg* v. *New York,* 390 U.S. 629, 639 (1968). Aspects of child rearing protected from unnecessary intrusion by the government include the inculcation of moral standards, religious beliefs, and elements of good citizenship. *Wisconsin* v. *Yoder, supra* at 233. See *Meyer* v. *Nebraska, supra*; *Pierce* v. *Society of Sisters, supra.* Thus, for example, in *Meyer* v. *Nebraska,* the Court held that the State could not prohibit the teaching of languages other than English in the public school. Similarly, in *Pierce* v. *Society of Sisters, supra,* the Court held that the State could not pass a law requiring that all students attend public school, rather than private or parochial schools.[7] The Court has held, on substantially the same reasoning, that government may not intrude unnecessarily on familial privacy. *Prince* v. *Massachusetts, supra.* See *Moore* v. *Cleveland,* 431 U.S. 494, 499 (1977).[8]

While it is clear that the plaintiff parents possess these protected interests, they have failed to demonstrate how the

---

[7]Each of these laws might have been upheld, however, had the State been able to show a compelling interest requiring State action. For example, in *Prince* v. *Massachusetts,* 321 U.S. 158 (1994), the Court held that the State's interest in protecting children by laws prohibiting child labor overcame a parent's interest in directing the religious development of her child. *Id.* at 166-167.

[8]Massachusetts caselaw has endorsed these principles. See, e.g., *Matter of McCauley,* 409 Mass. 134, 136-137 (1991); *Care & Protection of Charles,* 399 Mass. 324, 333-334 (1987); *Custody of Two Minors,* 396 Mass. 610, 617 (1986); *Commonwealth* v. *Stowell,* 389 Mass. 171, 173 (1983); *Richards* v. *Forrest,* 278 Mass. 547, 553 (1932).

interests are burdened by the condom-availability program to an extent which would constitute an unconstitutional interference by the State. This is the threshold requirement in the analysis of these constitutional claims. Without it, we need not inquire into the State's interest in implementing the program. *Doe* v. *Irwin*, 615 F.2d 1162, 1168 (6th Cir.), cert. denied, 449 U.S. 95 (1980).

The type of interference necessary to support a claim based on an alleged violation of parental liberty appears to be that which causes a coercive or compulsory effect on the claimants' rights. The plaintiffs claim, however, that they were only required to show an infringement of their rights, and not necessarily a coercive one. While courts apparently have not explicitly stated that "coercion" is the standard, they have not proceeded further in the constitutional analysis unless the governmental action has had a coercive effect on the claimants' parental liberties. See *Doe* v. *Irwin, supra* at 1168. See also *Wisconsin* v. *Yoder, supra* (compulsory school attendance law violated, inter alia, Amish parents' right to direct religious upbringing of children); *Pierce* v. *Society of Sisters, supra* (law requiring public school attendance and prohibiting attendance at private parochial schools violated parental liberties); *Meyer* v. *Nebraska, supra* (law prohibiting teaching of foreign languages to school children violated parental liberties). These cases strongly imply that, in order to constitute a constitutional violation, the State action at issue must be coercive or compulsory in nature. Coercion exists where the governmental action is mandatory and provides no outlet for the parents, such as where refusal to participate in a program results in a sanction or in expulsion. See, e.g., *Wisconsin* v. *Yoder, supra; Meyer* v. *Nebraska, supra* at 399-401; *Pierce* v. *Society of Sisters, supra; Doe* v. *Irwin, supra.*

We discern no coercive burden on the plaintiffs' parental liberties in this case. No classroom participation is required of students. Condoms are available to students who request them and, in the high school, may be obtained from vending machines. The students are not required to seek out and ac-

cept the condoms, read the literature accompanying them, or participate in counseling regarding their use. In other words, the students are free to decline to participate in the program. No penalty or disciplinary action ensues if a student does not participate in the program. For their part, the plaintiff parents are free to instruct their children not to participate. The program does not supplant the parents' role as advisor in the moral and religious development of their children. See *Doe* v. *Irwin*, *supra* at 1168. Although exposure to condom vending machines and to the program itself may offend the moral and religious sensibilities of the plaintiffs, mere exposure to programs offered at school does not amount to unconstitutional interference with parental liberties without the existence of some compulsory aspect to the program. See *Citizens for Parental Rights* v. *San Mateo County Bd. of Educ.*, 51 Cal. App. 3d 1, 30-31 (1975), appeal dismissed, 425 U.S. 908 (1976); *Medeiros* v. *Kiyosaki*, 52 Haw. 436, 438-439 (1970).[9]

The plaintiffs argue that the condom-availability program is coercive because, although participation is voluntary, the program has been implemented in the compulsory setting of the public schools. See G. L. c. 76, § 1 (1994 ed.). In this connection, they rely on an opinion of a divided lower court

---

[9]The plaintiffs argue that *Planned Parenthood of Southeastern Pa.* v. *Casey*, 505 U.S. 833 (1992), as well as *Ohio* v. *Akron Center for Reproductive Health*, 497 U.S. 502 (1990), and *Hodgson* v. *Minnesota*, 497 U.S. 417 (1990), demonstrate a protected interest in preserving the parent-child bond in decisions regarding whether to bear children. In those cases the Court upheld a State requirement that minors obtain parental consent before having an abortion. The plaintiffs argue that, if parental notification is required for abortion, then that same requirement should naturally apply to support a right of parental input before the act of sexual intercourse occurs.

The two situations are hardly comparable: abortion involves a medical procedure, while obtaining a condom does not. While these cases reaffirm the Court's respect for the parent-child bond and encouragement of parent-child communication, these cases place the privacy interests of minors in a position superior to parental liberties. In each of the cases, the Court upheld the parental consent requirement only because the law in issue also provided an alternative to parental consent. Minors may receive abortions under these laws without parental consent if consent is granted by a court.

(three-to-two decision), *Alfonso* v. *Fernandez*, 195 A.D.2d 46 (N.Y. 1993), which struck down a similar program in New York public schools as a violation of the parents' right to direct the upbringing of their children. The New York court based its decision, in part, on the fact that State law required the parents to send their children to school in combination with the fact that the program did not include an opt-out provision for parents whereby they could prohibit their children from obtaining condoms. While the case may be read as supporting the plaintiffs' position, we disagree with its reasoning. Moreover, we point out that the decision was based more directly on a State law which required parental consent for medical treatment. The court concluded, erroneously we think, that the distribution of condoms constituted a medical service for which parental consent was required. See *Alfonso* v. *Fernandez*, *supra* at 61-65 (Eiber, J., dissenting).

With regard to the discussion in the case on compulsory attendance, we agree with the view expressed by the dissent that "the mere fact that parents are required to send their children to school does not vest the condom . . . program with the aura of 'compulsion' necessary to make out a viable claim of deprivation of a fundamental constitutional right. Unlike *Meyer* v. *Nebraska*, . . . where a state attempted to totally prohibit parents from permitting their children to study a foreign language until after completion of the eighth grade, or *Pierce*, . . . where a state attempted to prohibit parents from sending their children to private parochial schools, the element of compulsion is totally absent here." *Id.* at 67. We agree further that "the fact that students are in closer proximity to a potential source of contraceptive devices does not change the fundamentally voluntary nature of the program. . . . [N]othing compels the petitioners' children to participate in the program." *Id.* at 68.

Because we conclude the program lacks any degree of coercion or compulsion in violation of the plaintiffs' parental liberties, or their familial privacy, we conclude also that neither an opt-out provision nor parental notification is re-

quired by the Federal Constitution. With the exception of the *Alfonso* case, it appears that cases requiring an opt-out or "excusal system" have involved school programs which would otherwise be compulsory. See, e.g., *Citizens for Parental Rights* v. *San Mateo County Bd. of Educ., supra* at 32; *Medeiros* v. *Kiyosaki, supra* at 440-441. Such is not the case here.

2. *First Amendment free exercise claim.* Next, the plaintiffs argue that the condom-availability program violates their Federal constitutional rights to the free exercise of religion. Religious freedom is guaranteed by the free exercise clause of the First Amendment, which provides that "Congress shall make no law respecting an establishment of religion, or *prohibiting the free exercise* thereof . . . ."[10]

The preliminary inquiry in a free exercise analysis is whether the challenged governmental action creates a burden on the exercise of a plaintiff's religion. *United States* v. *Lee*, 455 U.S. 252, 256-257 (1982). See *United States* v. *Means*, 858 F.2d 404, 406 (8th Cir. 1988), cert. denied, 492 U.S. 910 (1989). Only if a burden is established must the analysis move to the next step: a consideration of the nature of the burden, the significance of the governmental interest at stake, and the degree to which that interest would be impaired by an accommodation of the religious practice. *United States* v. *Means, supra.* The degree of interference with free

---

[10]The First Amendment applies to the States through the Fourteenth Amendment. *Cantwell* v. *Connecticut*, 310 U.S. 296 (1940). In *Attorney Gen.* v. *Desilets*, 418 Mass. 316, 320-321 (1994), we determined that claims based on art. 46, § 1, are to be analyzed under the Supreme Court's First Amendment jurisprudence as it existed prior to the recent decision in *Employment Div., Dep't of Human Resources of Or.* v. *Smith*, 494 U.S. 872 (1990), which altered the Supreme Court's First Amendment analysis only as to the degree of State interest required to overcome laws which substantially, but indirectly, burden religious conduct. See *Salvation Army* v. *Department of Community Affairs of N.J.*, 919 F.2d 183, 194 (3d Cir. 1990). In the view we take of the instant case, the holding of *Smith* is not relevant to our decision, nor does the Religious Freedom Restoration Act of 1993 (42 U.S.C. §§ 2000bb et seq.) seeking to reinstate the earlier Federal standard of *Wisconsin* v. *Yoder*, 406 U.S. 205 (1972), add anything to the plaintiffs' case.

exercise necessary to trigger further analysis of the State's justification for the action in question, must at least rise to the level of a "substantial burden." *Hernandez* v. *Commissioner of Internal Revenue*, 490 U.S. 680, 699 (1989). The Supreme Court has indicated that, just as in the context of a parental liberties claim, a "substantial burden" is one that is coercive or compulsory in nature. See *Lyng* v. *Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 447-451 (1988); *School Dist. of Abington* v. *Schempp*, 374 U.S. 203, 222-223 (1963). See also *Bowen* v. *Roy*, 476 U.S. 693, 704-705 (1986); *Smith* v. *Board of Educ., N. Babylon Union Free Sch. Dist.*, 844 F.2d 90, 92-93 (2d Cir. 1988); *Mozert* v. *Hawkins County Bd. of Educ.*, 827 F.2d 1058, 1065 (6th Cir. 1987), cert. denied, 484 U.S. 1066 (1988); *Grove* v. *Mead Sch. Dist. No. 354*, 753 F.2d 1528, 1534 (9th Cir.), cert. denied, 474 U.S. 826 (1985). The free exercise clause "categorically prohibits government from regulating, prohibiting, or rewarding religious beliefs as such," either directly or indirectly. *McDaniel* v. *Paty*, 435 U.S. 618, 626 (1978). *Wilson* v. *Block*, 708 F.2d 735 (D.C. Cir), cert. denied, 464 U.S. 956 (1983), and cert. denied sub nom. *Hopi Indian Tribe* v. *Black*, 464 U.S. 1056 (1984).[11] In our view the plaintiffs are unable to demonstrate sufficient facts to support their argument that the condom policy substantially burdens their rights freely to exercise their religion to any degree approaching constitutional dimensions.

The plaintiffs argue that the condom-availability program burdens their right freely to exercise their religion by creating a conflict between the religious teaching of parents as to the issue of premarital sexual intercourse, and the view, allegedly endorsed by the school committee, that sexual activ-

---

[11]Massachusetts cases addressing the issue of religious freedom under both the State and the Federal Constitutions have generally also inquired, as a preliminary matter, whether the State action creates a substantial burden on a claimant's free exercise of religion. *Attorney Gen.* v. *Desilets*, *supra* at 322. *Fedele* v. *School Comm. of Westwood*, 412 Mass. 110, 116 (1992), quoting *Hernandez* v. *Commissioner of Internal Revenue*, 490 U.S. 680, 699 (1989).

ity before marriage is not only permissible but also can be made safe. The plaintiffs contend further, as noted in the previous section, that the program is coercive in nature, because it exists in the public schools, to which parents are compelled to send their children, and because it lacks an opt-out provision by which parents could choose to prohibit their children from obtaining condoms at school. The plaintiffs also argue that peer pressure may add to the coercive effect of the program.

Although all citizens have a right freely to exercise their religion, the free exercise clause "cannot be understood to require the Government to conduct its own internal affairs in ways that comport with the religious beliefs of particular citizens. . . . The Free Exercise Clause affords an individual protection from certain forms of compulsion . . . ." *Lyng* v. *Northwest Indian Cemetery Protective Ass'n, supra* at 448, quoting *Bowen* v. *Roy,* 476 U.S. 693, 699-700 (1986). See *School Dist. of Abington* v. *Schempp, supra* at 221-222. "[I]ncidental effects of government programs, which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs, [do not] require government to bring forward a compelling justification for its otherwise lawful actions." *Lyng* v. *Northwest Indian Cemetery Protective Ass'n, supra* at 450-451. The "Free Exercise Clause is written in terms of what the government cannot do to the individual, not in terms of what the individual can exact from the government." *Id.* at 451, quoting *Sherbert* v. *Verner,* 374 U.S. 398, 412 (1963) (Douglas, J., concurring). See *Yonkers Racing Corp.* v. *Yonkers,* 858 F.2d 855, 871 (2d Cir. 1988), cert. denied, 489 U.S. 1077 (1989).

Courts have found violations of the free exercise clause where the State conditions receipt of an important benefit on conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by a religious belief. *Smith* v. *Board of Educ., N. Babylon Union Free Sch. Dist., supra* at 93. The Supreme Court has invalidated conditions on the receipt of unemployment benefits which indi-

rectly burden free exercise without sufficient justification. See *Hobbie* v. *Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136 (1987); *Thomas* v. *Review Bd. of the Ind. Employment Sec. Div.*, 450 U.S. 707 (1981); *Sherbert* v. *Verner*, 374 U.S. 398 (1963).

We conclude that the program in issue which does not violate the plaintiffs' parental liberties or privacy rights also does not violate their rights freely to exercise their religion. There is no requirement that any student participate in the program. The plaintiffs argument that the well-known existence of peer pressure in secondary schools adds to the alleged burden on their free exercise rights simply does not rise to the level of constitutional infringement. See *Citizens for Parental Rights* v. *San Mateo County Bd. of Educ.*, 51 Cal. App. 3d 1, 17 (1975); *Smith* v. *Ricci*, 89 N.J. 514, 521, appeal dismissed sub nom. *Smith* v. *Brandt*, 459 U.S. 962 (1982). The condom-availability program in Falmouth does not penalize students or parents for their religious beliefs or condition the receipt of benefits on a certain belief. Although the program may offend the religious sensibilities of the plaintiffs, mere exposure at public schools to offensive programs does not amount to a violation of free exercise. Parents have no right to tailor public school programs to meet their individual religious or moral preferences. *Epperson* v. *Arkansas*, 393 U.S. 97, 106 (1968). *Grove* v. *Mead Sch. Dist. No. 354*, 753 F.2d 1528 (9th Cir. 1985).

*Judgment affirmed.*