Staffer, J.

Background

In October 1992, the plaintiff, Paul L. Muckle (Muckle) was convicted of armed assault with intent to murder, assault and battery by means of a dangerous weapon, unlawful possession of a firearm, and unlawful possession of ammunition and sentenced to 9 to 12 years in prison. Muckle was represented at trial by the defendant, his attorney Elliot R. Levine (Levine). The Commonwealth introduced the following evidence at trial. The victim, William White (White), testified that on February 15, 1992, he and a friend, William Carter (Carter), went to Muckle’s apartment to purchase drugs. Initially, someone other than Muckle answered the door to the apartment. When Muckle came to the door he asked White and Carter to wait a moment, walked back into the apartment, and closed the door. Carter had recently robbed Muckle at gunpoint on February 2, 1992 (armed robbery). Concerned that Muckle had recognized him as the perpetrator of the armed robbery, Carter fled the scene. When Muckle returned and opened the door, he pulled a shotgun and pointed it at White. Muckle fired the weapon at the hallway wall behind White and then told White to run. White ran out of the apartment and slipped on the snow outside. Muckle walked out onto the third floor porch outside his apartment. While on the ground looking up, White saw Muckle on the porch aiming the shotgun down in his direction. White was hit by shotgun pellets in both his head and hand. At the hospital, White stated to police that he did not know who had shot him. At trial, White stated that he had always known that Muckle had done the shooting but had not previously named Muckle as the perpetrator because he did not want to be a “snitch.”
Prior to the shooting, Muckle had contacted the police and informed them that both Carter and White had committed the armed robbery. Approximately two weeks after White was shot, White was arrested and charged with the armed robbery of Muckle. After learning that Muckle had informed the police of White’s involvement in the robbery, White filed a complaint alleging that Muckle had committed the February 15, 1992 shooting. At the time that White testified at Muckle’s trial, two indictments in regard to the armed robbery, armed assault in dwelling and armed robbery, were still pending against White. During Muckle’s trial, White denied multiple times that he had robbed Muckle. He also denied that he had made any deal with the District Attorneys Office to receive favorable treatment with regard to his outstanding indictments in exchange for his testimony against Muckle. However, after Muckle was convicted of shooting White, White’s indictment for armed assault in a dwelling was dismissed and White pled guilty to the charge of armed robbery and received two years of unsupervised probation.
On the morning of the second and final day of trial, defense counsel was informed for the first time that the Commonwealth intended to call Muckle’s landlord, Mr. Trevor (Trevor) to testify as a witness. The Commonwealth informed Mr. Levine that Trevor would testify about a conversation that he had had with Muckle during which Muckle boasted how he had shot at White in the hallway, and shot again at the him from the porch once White had exited the building.
*675 The Commonwealth presented only two witnesses: the victim and a police officer who had investigated the scene some time after the shooting occurred. At the time that the Commonwealth’s second and final witness finished testifying, Trevor was not yet available to take the stand. The prosecuting attorney had told Mr. Levine that Trevor would not be available until later that afternoon. The prosecutor requested that he be allowed to rest his case in chief and be allowed to call Trevor as a witness when he became available later that day. The judge allowed the Commonwealth to rest in chief but reserved judgment on whether Trevor would be allowed to testify.
Levine had multiple witnesses available to testify in Muckle’s defense including Muckle himself, and a potential alibi witness, Brian Wilson (Wilson). After the Commonwealth rested its case in chief, Mr. Levine spoke with his client and explained the circumstances of the case. Levine feared that if he proceeded to call witnesses, Trevor might become available to testify and the trial judge would allow the Commonwealth to call Trevor as a rebuttal witness. Levine stated to Muckle that, in his estimation, based on the testimony of the two witnesses called by the prosecution, Muckle had a better than “50/50" shot of acquittal if the defense rested. Mr. Muckle had previously stated to Mr. Levine that he wished to testify on his own behalf. Levine advised Muckle that it would be in his best interest for the defense to rest its case in order to prevent the juiy from hearing Trevor’s potentially damaging testimony, even though this would mean that no defense witnesses would be allowed to testify. Muckle reluctantly acquiesced to Levine’s recommendation. It remains somewhat unclear what Mr. Muckle would have said had he testified.
Levine then announced to the judge that he would rest his case and requested that closing arguments begin. The judge assured Mr. Levine that if he rested at that point, Trevor, should he arrive, would not be allowed to testify. In response to Mr. Levine’s decision to rest, the Commonwealth attempted to reopen its case and call additional witnesses; however, the judge did not allow any further testimony. The case proceeded straight to oral arguments and then went to the jury. Muckle was convicted on all charges.
After his conviction, Muckle filed a pro se motion for a new trial, and subsequently obtained a new attorney who filed on September 29, 1992 an amended motion for a new trial. The motion alleged multiple grounds including a claim of ineffective assistance of counsel. The court (Hamlin, J.) rejected Muckle’s claim of ineffective assistance and denied the motion. Commonwealth v. Muckle, Cr. No. 10470-001-004 (Suffolk Super.Ct. May 11, 1995).
The Appeals court vacated the superior court’s denial and remanded the case with the instruction that the court conduct an evidentiary hearing to explore whether White’s testimony that he had not been offered a deal by prosecution to testify against Muckle was peijuiy, and whether Levine had failed to honor Muckle’s wish to testify in his own defense. Commonwealth v. Muckle, No. 95-P-1922 (App.Ct. April 30, 1996). Following the evidentiary hearing, the Superior Court allowed Muckle’s motion for a new trial. The court stated that it “cannot rule that the defendant’s waiver [of his right to testify on his own behalf] was knowingly and intelligently exercised." Commonwealth v. Muckle, Cr. No. 92-10470 (Suffolk Super.Ct. November 25, 1996), at 3. The Appeals Court affirmed the ruling of the Superior Court. Commonwealth v. Muckle, No. 97-P-621 (App.Ct. March 16, 1998).
Muckle now asserts a civil claim of malpractice against his former attorney, Levine. He claims that Levine was negligent in his representation during Muckle’s criminal trial because he committed the following acts or omissions: 1) Levine refused Muckle’s request to testify on his own behalf; 2) Levine failed to call Wilson, a potentially exculpatory witness; 3) Levine failed to impeach the victim’s testimony by introducing available evidence that the victim had made a deal with prosecutors with respect to indictments pending against him; and 4) Levine failed to produce available medical evidence which could have been used for purposes of impeachment. Both parties have moved for summary judgment.

Discussion

I. Plaintiff’s Motion for Summary Judgment
A plaintiff who has moved for summary judgment has the burden of establishing that there exist no genuine issues of material fact with respect to every relevant issue, even if he would have no burden on an issue if the case were to go to trial, and consequently that he is entitled to judgment as a matter of law. Highland Insurance Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997); Curtis v. School Committee of Falmouth, 420 Mass. 749, 753 (1995). A tort plaintiff seeking damages for legal malpractice must establish that: 1) the attorney had a duly toward the plaintiff; 2) the attorney breached the duty by failing to meet the proper standard of care; and 3) that the breach proximately caused the plaintiffs injuries. See Fishman v. Brooks, 396 Mass. 643, 646-47 (1986); Barry, Legal Malpractice in Massachusetts, 63 Mass.L.Rev. 15 (1978). A criminal defendant alleging malpractice against his defense attorney must also demonstrate by a preponderance of the evidence that he is actually innocent of the crimes for which he was tried. Glenn v. Aiken, 409 Mass. 699, 707 (1991).
As discussed below, Muckle has failed to show that Levine was, as a matter of law, negligent in performing his role as Muckle’s criminal defense attorney. Muckle has also failed to show that there exists no material issue of fact with regard to his innocence and that he is, as a matter of law, innocent of the crimes with which he was charged. Therefore, the plaintiffs motion for summary judgment is denied.
*676 I. Defendant’s Motion for Summary Judgment
A defendant is entitled to summaiy judgment if he demonstrates, by reference to materials described within Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the plaintiff has no reasonable chance of proving an essential element of the plaintiffs case. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish a genuine issue of material fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
A. Actual Innocence
In order for a criminal defendant to successfully assert a claim of malpractice against his former defense attorney for negligence committed during representation at trial, he must demonstrate, by a preponderance of the evidence, that he is actually innocent of the crimes for which he was tried. Aiken, 409 Mass. at 707. Levine asserts in his motion for summaiy judgment that Muckle has failed to allege any specific facts which would establish a genuine issue regarding his innocence.
The court agrees with Levine’s argument that the Appeals Court’s reversal of Muckle’s conviction on the grounds that Muckle may not have sufficiently waived his constitutional right to testify is not dispositive proof of his actual innocence. However, Muckle has also proffered other evidence of his innocence sufficient to avoid summaiy judgment on this issue. Muckle, during the evidentiary hearing held by the Superior Court, examined Brian Wilson, the alibi witness who was available to testify at Muckle’s trial but was not called. Mr. Wilson testified that he was present at Muckle’s apartment on Februaiy 15, 1992, the night of the shooting, and that both he and Muckle were in Muckle’s bedroom at the time shots were fired off of the porch. This sworn testimony is sufficient to establish an issue of material fact with regard to Muckle’s claim of innocence. Indeed, offering alibi testimony by an eye witness may be one of the few methods by which a former criminal defendant asserting a claim of malpractice would be able to make the veiy difficult required showing of actual innocence.
B. Negligent Representation
i.Failure to Impeach White’s Testimony
Muckle’s argument that Mr. Levine “failed to introduce readily available proof of inducement rewards” given to White as a witness for the prosecution has already been addressed and dismissed by this court. The court, after conducting an evidentiaiy hearing to explore this exact issue, ruled that “there is no credible evidence that the disposition of White’s pending indictments was part of a deal in exchange for his testimony at [Mr. Muckle’s] trial.” Muckle, Cr. No. 92-10470 (Suffolk Super.Ct.), at 1, 2. Mr. Levine could not have been negligent for failing to introduce evidence which this court is satisfied did not exist at the time of trial.
ii.Failure to Produce Available Medical Evidence
Muckle also asserts the argument that Mr. Levine “failed to uncover readily available medical evidence which showed that the Commonwealth had introduced false evidence of injuiy to the victim.” Medical reports were subpoenaed by the Commonwealth but were apparently not received before the end of trial. Since the records were unavailable, the prosecutor demonstrated the cause of the victim’s injuiy through the victim’s own testimony and through showing the juiy the victim’s scars.
Mr. Muckle does not state how the description of the victim’s injuries as included in the medical records, which confirm that the victim was shot, differed from the actual injuries which the victim suffered and showed to the juiy. It is wholly unclear how the timely production of medical records would have aided Mr. Muckle’s defense.[1] In fact, it seems likely that the prosecution’s case was weakened by its failure to produce the records and its reliance on the victim’s words and body, rather than documented medical evidence, to prove the cause of the victim’s injuries. Mr. Levine objected on the record to this method of proof and argued extensively during his closing that by failing to produce the medical records the Commonwealth had not carried its burden of proof. Mr. Muckle has failed to demonstrate how he was injured by Levine’s failure to produce the medical records or that Mr. Levine was negligent in failing to submit them to the juiy.
iii.Decision to Rest the Defense’s Case Without Calling Available Witnesses
After Muckle’s conviction, he filed a motion for a new trial alleging multiple grounds including a claim of ineffective assistance of counsel. In support of this claim, Muckle alleged that he had been prevented from testifying on his own behalf, and that his attorney failed to call Wilson, an available alibi witness. The Superior Court rejected Muckle’s claim that Levine was ineffective in failing to call Wilson and in failing to call Muckle to testify as a witness. Muckle, No. 95-P-1922 (App.Ct.), at 5; Muckle, Cr. No. 10470-001-004 (Suffolk Super.Ct.), at 8, 9. The court stated that in light of the possibility that it may have opened the door for damaging rebuttal testimony from Trevor, calling additional witnesses may have done more harm than good. Muckle, Cr. No. 10470-001-004 (Suffolk Super.Ct.), at 8. The court went on to state that Levine’s decision to rest his case without calling any witnesses was a “conscious, tactical judgment and not manifestly unreasonable.”[2] Id. at 9.
The Appeals Court vacated the Superior Court’s denial and remanded the case with the instruction that the court conduct an evidentiaiy hearing to explore whether Levine had failed to honor Muckle’s wish to testify on his own behalf. The Appeals Court stated that, “the defendant has raised a substantial issue in *677 regard to his claim that he received ineffective assistance of counsel.” Muckle, No. 95-P-1922 (App.Ct.), at 7, 8.
Following the evidentiary hearing, the Superior Court allowed Muckle’s motion for a new trial, stating:
Based upon the testimony of defense counsel, it appears [Muckle] wanted to testify and did not do so begrudgingly pursuant to his lawyer’s advice ... This Court does not fault defense counsel for taking the defendant at his word . . . Since [the right of a defendant to testify on his own behalf] is one of constitutional dimensions and fundamental to a fair trial, any waiver must be subject to a strict standard and must be knowingly and intelligently exercised . . . The decision whether to testify must be made personally by the defendant in consultation with his counsel . . . Based on a review of the record at the evidentiary hearing, this court rules that the defendant’s decision [not to testify] was at best only an acquiescence in the advice of his counsel. When the required strict standard for waiver is applied, this court cannot rule that the defendant’s waiver was knowingly and intelligently exercised.
Muckle, Cr. No. 92-10470 (Suffolk Super.Ct.), at 2, 3.
The Appeals Court affirmed the ruling of the Superior Court that Muckle had not knowingly and intelligently waived his right to testify. However, the Appeals Court went on to state:
We do not regard the judge’s expressed view that defense counsel could not be faulted for “taking the defendant at his word” as inconsistent with her finding that the defendant did not knowingly and intelligently waive his right to testify. A misunderstanding between an attorney and his client could result in the same conclusion. The issue is not whether defense counsel was effective but whether the defendant’s waiver was knowingly and intelligently made.
(Emphasis added.) Muckle, No. 97-P-621 (App.Ct.), at 3, n.2.
Muckle claims in his complaint that Levine was negligent in his representation because he “refused to allow [Muckle] to take the witness stand to testify on his own behalf.” As previously stated by the court, Levine did not “refuse” to allow Muckle to testify, rather he strongly encouraged Muckle to give up his right to do so. The court determined that in “acquiescing” to Levine’s strong advice, Muckle did not make a knowing and intelligent waiver of his right to testify. However, the court has never held that Levine’s advice to Muckle that it was in Muckle’s best interest to rest his case without testifying on his own behalf or calling any other defense witnesses was grounds for ineffective assistance. To the contrary, the court has already decided that Levine was competent and put on the best defense given the circumstances available. Muckle, Cr. No. 10470-001-004 (Suffolk Super.Ct.), at 9, 10.
A criminal defendant has a fundamental right to testify on his own behalf. Rock v. Arkansas, 483 U.S. 44, 49-53 (1987); Commonwealth v. Freeman, 29 Mass.App.Ct. 635, 639-40 (1990). This right arises from several provisions of the Constitution: the due process clause of the Fourteenth Amendment; the compulsory process clause of the Sixth Amendment giving a defendant the right to call witnesses in his favor; and the Fifth Amendment guarantee against self-incrimination. Id. Any waiver of this right must be subject to a strict standard and must be knowingly and intelligently exercised. Schveckloth v. Bustamonte, 412 U.S. 218, 235-46 (1973). It is clear from the procedural history of Muckle’s motion for a new trial that his conviction was overturned because he did not knowingly and intelligently waive his right to testify, not because he received ineffective assistance of counsel. Levine’s strong recommendation to his client that he give up his right to testify and present witnesses in his defense in order to avoid the jury hearing the damaging testimony of a rebuttal witness was not ineffective assistance of counsel even if Muckle’s acquiescence to this advice did not constitute a valid waiver of his rights. As the Appeals Court stated, these two contentions are wholly separate issues. The Superior Court’s initial ruling that Levine’s tactical decision to rest his case without presenting witnesses was reasonable and did not serve as grounds for a claim of ineffective assistance of counsel has never been overturned.
The standard for determining whether a criminal defendant received ineffective assistance of counsel is whether counsel’s behavior fell “measurably below that which might be expected from an ordinary fallible lawyer.” Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). This showing is similar to the showing required to prove a case of legal malpractice. Commonwealth v. Rondeau, 378 Mass. 408, 412 (1979). The standard of care owed by an attorney to a criminal defendant is that he possess and exercise a reasonable degree of care and skill in the performance of his duties. Aiken, 409 Mass. 699, 709 (1991), Liacos J., concurring, citing Caverly v. McOwen, 123 Mass. 574, 578 (1878). These two standards are so similar that it has been held that “an appellate court’s ruling that counsel was not ineffective may well justify precluding a criminal defendant from maintaining a malpractice action against his trial counsel.” Aiken, 409 Mass. 699, 701-02 (1991). The court therefore finds that, in light of the prior rulings that Mr. Levine’s representation of Mr. Muckle was effective, Mr. Muckle is precluded from bringing a subsequent malpractice claim against Mr. Levine, naming as grounds for his claim any acts or omissions which were cited in his motion for a new trial and addressed by the court in response to his claim of ineffective assistance of counsel.
*678 Order
For the foregoing reasons, the plaintiffs motion for summary judgment is DENIED and the defendant’s motion for summary judgment is GRANTED.

Mr. Muckle’s claim that the Commonwealth’s failure to produce medical records prejudiced his defense was discussed and rejected by the superior court in its response to the defendant’s motion for a new trial. Muckle, Cr. No. 10470-001-004 (Suffolk Super.Ct.), at 5.

The court stated: “Defendant has not shown that defense counsel’s conduct was substandard. On the contrary, the court finds that counsel is an able defense attorney who put on the best defense given the circumstances available . .'. Evaluating the claimed errors in the context of the whole trial to determine whether counsel’s conduct was measurably below that of an ordinary fallible lawyer, the court concludes that these claims were either not errors at all or were reasonable exercises of counsel’s judgment... [T]he defendant was not deprived of the effective assistance of counsel.” Muckle, Cr. No. 10470-001-004 (Suffolk Super.Ct.), at 9, 10.