OPINION OF THE COURT
Peter E. Corning, J.
This is a proceeding brought under article 10 of the Family Court Act alleging that the respondents are educationally neglecting their two minor children.[1] The respondents, mother and stepfather of the two children, have chosen to educate their children at home rather than in the public schools. This matter has been before the court before, and the previous history will aid in understanding the current factual situation.
FACTS
A previous petition for neglect dated February 1, 1980, was brought against the respondents by petitioner. By order dated May 23, 1980,1 directed that the home school be evaluated by members of the Committee on Evaluation of Nonpublic Schools,[2] that copies of the materials and *99 lesson plans used for instruction be furnished by respondents to the committee prior to the evaluation, and that all textbooks and materials used in the home school be supplied to the committee. On June 4, 1980, pursuant to my order, the committee visited the Fickeisen residence in Moravia for the purpose of the evaluation. While critiquing the home school in several aspects, the committee’s unanimous opinion at that time was “that the children are currently receiving equivalent instruction to that available in the public schools.” Despite this finding, the report of July 15, 1980 proceeded to caution that there was a definite question regarding Mrs. Fickeisen’s ability to meet the needs of her children as the curriculum becomes more sophisticated and that any approval given was for the current year only. The report further stated that if home teaching is contemplated for another year, the programs should be approved in advance and there should be a periodic review by the evaluation committee. Based on this report, I issued my order of disposition of July 18, 1980 dismissing the neglect petition.
The current problem has arisen as a result of the committee attempting to carry out its periodic review. On November 5, 1982, the District Superintendent of Schools, Dr. Paul W. Haley, requested the opportunity to review the current educational program of the home school; the respondents complied and supplied the materials to Dr. Anthony T. Beaudry, Superintendent of the Moravia School District.
By letter dated January 17, 1983, Dr. Beaudry acknowledged receipt of the materials and requested permission to do an on-site evaluation to determine the equivalency of instruction. Respondents have refused to permit the on-site evaluation which, in petitioner’s view, prevents the school authorities from being able to determine whether or not the children are receiving an equivalent education and therefore constitutes educational neglect.
In answer to the instant summons dated February 25, 1983 and petition for neglect, respondents submitted their response sworn to March 18, 1983 by their then attorney, *100 Charles W. Avery, Esq.[3] The response alleged that the on-site evaluation was unnecessary, burdensome and harassing, and asked for dismissal of the petition. A hearing was held before me on March 18, 1983, at which time a determination was withheld as the court was under the impression the respondents would agree to the on-site evaluation. Thereafter, respondents refused to permit the evaluation and retained their current attorneys. The petitioner then reactivated this proceeding by summons dated May 24, 1983; a court appearance was held before me on May 31, 1983, and briefs thereafter submitted by both parties. In their brief, respondents additionally contend that the proposed on-site evaluation constitutes an unwarranted intrusion that adversely affects their constitutional rights relating to religion,[4] privacy and child rearing.
DISCUSSION
Section 3205 (subd 1, par a) of the New York Education Law requires children between the ages of 6 and 16 to “attend upon full time instruction.” This requirement can be met by attendance at a nonpublic school if (1) the instruction is provided by a competent teacher, (2) the instruction is substantially equivalent to that provided in the local public schools, and (3) the child attends such school for the same general time periods as students in the local public schools. The public school board of education, through the superintendent of schools of the district in which the child resides, is responsible for ascertaining whether the child is receiving instruction substantially equivalent in time and quality to that provided in the public school of the home district.
Article 10 of the Family Court Act defines a neglected child as including one less than age 18 whose physical, mental or emotional condition has been or is in imminent danger of being impaired as a result of the failure of his parents to educate him in accordance with the provisions of *101 part 1 of article 65 of the Education Law. (Family Ct Act, § 1012, subd [f], par [i], cl [A].)
Subdivision 2 of section 3204 of the Education Law provides that if instruction is given elsewhere than in a public school, it must be given by a competent teacher and be at least substantially equivalent to that of the local public schools. The burden of proof is upon respondents to show that substantially equivalent instruction is being afforded. (See, e.g., Matter of Thomas H., 78 Misc 2d 412.) To satisfy this burden, it is sufficient to show a systematic course of study is being undertaken at home and that the parent is rendering quality instruction. (Matter of Walker v Foster, 69 Misc 2d 400, 403.) “[instruction given to a child at home by its parent, who is competent to teach, should satisfy the requirements of the compulsory education law.” (People v Turner, 277 App Div 317, 319-320.)
To properly evaluate the “equivalency” of the education being afforded the minors, the petitioner believes an on-site evaluation of the home school necessary. The school setting is an obvious and critical factor affecting the nature and quality of education being afforded, and a factor that is established by common sense with no need of proof. More importantly, the law is clear that instruction must be afforded by a competent teacher. (Education Law, § 3204, subd 2.) In my opinion it is impossible to evaluate the competency of any teacher, whether in a public school or a home school, without actually observing that teacher in a classroom setting instructing pupils. This conclusion is so elemental and basic, that judicial knowledge can be taken of it and no proof is required.
The April, 1980 Guidelines for Determining Equivalency of Instruction, issued by Robert R. Spillane, then Deputy Commissioner for Elementary, Secondary and Continuing Education of the New York State Education Department, recommends that visitation be employed in the case of new nonpublic schools and for those nonpublic schools whose equivalency has been called into question. The visitation contemplated relates to matters other than teacher observation, but is an indication of the importance attached by the State Education Department to a physical visit to the premises.
*102 The request to conduct very infrequent on-site evaluations (the last one being on June 4, 1980) is most reasonable and unobtrusive. As the committee noted in its last visitation, there was a definite question as to Mrs. Fickeisen’s ability to teach a more sophisticated curriculum. It is the committee’s duty to see that instruction is delivered by competent teachers, and its determination that an on-site visit and evaluation is necessary is beyond question by any reasonable person. If the frequency of visitation were such as to annoy or to discourage home instruction, that would present another case; but that is certainly not the factual situation presented herein.
I cannot find that this infrequent, unobtrusive home visitation, at a time to be mutually agreed upon, violates any of the respondents’ constitutionally protected rights. Respondents have no absolute right to educate their children at home free from all State regulation or control; having chosen to utilize the statutory exceptions to public education, they must observe the reasonable requirements imposed upon home schooling by those charged with responsibility for the children’s proper home education.
I am constrained to find that the respondents have failed to carry their burden of proof to demonstrate the equivalency of the education being afforded by their refusal to allow a reasonable and necessary on-site evaluation. However, rather than find educational neglect at this juncture and acting in the best interest of all concerned, particularly the children, I will withhold such a determination for a period of 30 days from the date of this decision. If within that time period the parties have agreed upon a mutually satisfactory date for an on-site evaluation, I will continue to hold this proceeding in abeyance pending the report of the committee’s actual on-site evaluation. If, however, no agreement has been reached within said time period, petitioner’s counsel shall submit an order in accordance with this decision, finding educational neglect on the part of respondents, and ordering a dispositional hearing.

. John Kilroy was born April 6, 1967, and Melissa Kilroy born Oct. 24, 1969. As John Kilroy is now over 16 years of age, which is past the age of compulsory education as prescribed in section 3205 (subd 1, par a) of the Education Law, it appears that the determinations made herein will no longer have any applicability to him.

. The Board of Cooperative Educational Services of Cayuga-Onondaga Counties, with Paul W. Haley as District Superintendent of Schools, has appointed a Cayuga-Onondaga Nonpublic Schools Evaluation Committee. The purpose of this committee is to *99 evaluate the curriculum and competency of instruction in nonpublic schools, including home schools.

. Though there has been no formal substitution of attorneys filed, attorney Pullen has replaced attorney Avery.

. Respondents obtain curriculum materials from the Christian Liberty Academy of Prospect Heights, Illinois, which apparently makes a specialty of providing materials and assistance to various satellite and home schools. It is claimed that the academy is a tax-exempt religious and educational institution, and that respondents are operating their home school in conjunction with it.