Edgar S.K. Merrell 3rd, Esq. Lowville Academy and Central School Counsel
You have asked whether an individual may serve as a school board member for both a public school district and a private school within the district.
Your letter notes that a member of the St. Peter's Catholic School Board, currently serving a three-year term ending on June 30, 1988, was recently elected to serve a three-year term on the Lowville Academy and Central School Board of Education for the term commencing July 1, 1987 and ending June 30, 1990. The individual involved would like to complete the final year of the Catholic school board position, concurrently with the first year of the Lowville school board position. Members of the Catholic school's board of education are elected by a vote of the parish members.
Under New York's compulsory education law, minors between the ages of six and sixteen are required to attend a full-time course of instruction, either at a public school, private school or under an approved home-study course (Education Law, § 3205[1]). The Education Law provides that instruction given in a private school or at home must be "substantially equivalent" to that given in the public school of the city or district where the student resides (id., § 3204[2]).* Under Department of Education Guidelines, the public school board of education, through the superintendent of schools of the district in which the child resides, is responsible for ascertaining whether the child is receiving instruction substantially equivalent in time and quality to that provided in the public school (Matter of Kilroy v Fickstein,121 Misc.2d 98, 100-101 [Family Ct, Cayuga Co, 1983]).** The duties of the public school board members, therefore, include the evaluation of the program of instruction being provided in nonpublic schools within the district. The evaluation of substantial equivalence is essentially a discretionary one, and not a mere ministerial act (ibid.). A person who serves on both the public and private school boards, therefore, would be charged with the duty of preparing and implementing a course of instruction (as private school board member) and evaluating the adequacy of that program (as public school board member). We believe it is difficult, if not impossible, for an individual to review impartially a course of instruction in one capacity which he or she implemented in another capacity.
In addition, potential conflicts arise with regard to the provision of services by public school boards to private school students. Notwithstanding the separation of church and State created by the Establishment Clause,*** students attending private primary and secondary schools receive assistance from New York State. The Supreme Court has held that in certain instances, such as State provision of textbooks and transportation services to pupils attending parochial schools, the provision of services by a public school board to parochial school students does not violate the separation of church and State set forth in the Establishment Clause (Board of Education v Allen, 392 U.S. 236
[1968]; Everson v Board of Education, 330 U.S. 1 [1947]).
Under New York's Education Law, school districts are charged with the duty to provide certain services to all students residing within the district, whether they attend public or nonpublic schools. These duties include provision of textbooks (Education Law, § 701); transportation to and from school (id., § 3635); services for students in need of remedial instruction (id., § 4452); services for handicapped and gifted students (id., § 3602-c); and health and welfare services (id., § 912).
Nonpublic school students residing in a school district are entitled to these services as a matter of right. As a general rule, the board does not exercise any discretion in deciding whether they should receive these services. To the extent a school district makes these services available, it must make them available on an equal basis to all students (see, Finkel v New York City Board of Education, 474 F. Supp. 468 [DC, EDNY, 1979], affd 622 F.2d 573 [2d Cir, 1980]).
In certain areas, however, the board does exercise discretion by controlling the means by which these services are provided, and in some instances, whether or not they are provided at all. For example, under section 701 of the Education Law, the board sets the deadline for textbook requests from nonpublic school students (Education Law, §701[8]). The board also has authority to accept late filings if they are accompanied by a reasonable explanation. The determination of whether an explanation is reasonable is a discretionary determination on the part of the school board.
Section 701 of the Education Law provides a formula for determining the maximum amount of money a school board may be required to expend on new textbooks.* The State Education Department's recommended procedures (March, 1982) describe the options of a school board to adjust its budget in light of textbook expenses:
 "The total cost of the books being considered for purchase is then checked against the budgeted appropriation. If the total cost is not in excess of the appropriation, no problem exists. If, on the other hand, the total cost is in excess of the appropriation, the board will need to determine whether it wishes to exceed the appropriation. If so, it may increase the textbook appropriation or it may transfer money from other accounts. If not, the board must determine the subject areas and grade levels for which it will not be able to loan textbooks.
 "If the board feels it should spend more than the appropriation, but not as much as is required to purchase all of the textbooks to meet the needs of all resident pupils attending public and nonpublic schools on an equitable basis, the board must then determine in which subject areas or at what grade levels it will not be able to loan textbooks. This decision will usually affect students in both public and nonpublic schools" (Revised Guidelines for Administering the New York State Textbook Law, March, 1982, p 2 ["Revised Guidelines"]).
These guidelines indicate that the board has discretion to determine when to exceed its textbook appropriation (see Sodus Central School v Rhine,63 A.D.2d 820, 821 [4th Dept, 1978]). Because the board determines the subject areas and grade levels with respect to which it will not be able to provide textbooks, it would appear that these decisions would affect public and nonpublic school students alike. Nonpublic schools, however, are not required to use the same textbooks as public schools. In a 1967 advisory opinion, the Commissioner of Education addressed the question of selection of textbooks by a parochial school:
 "Neither do I believe that the public school authorities have been given any authority to restrain parochial school officials in their efforts to improve the education being given their students by changing textbooks. I think both sides must act in a reasonable manner taking all of the circumstances of the individual instance into account" (Formal Opinion of Counsel, No. 214, 7 Educ Dept Rep 158 [1967] [emphasis supplied]).
Because the textbook needs of public and nonpublic school students are not always identical or uniform, the school board must exercise a certain amount of judgment in determining the allocation of textbooks to private school students.
Our review of the various ways in which a public school board makes decisions affecting students attending nonpublic schools within the district leads us to conclude that service on both the public and nonpublic school boards is a conflict of interest. This conclusion is based on the cumulative effect of recurring scenarios where the public school board has to make discretionary decisions which directly affect the welfare of the nonpublic school students. When a school board member also sits on the school board for the nonpublic school, she has a duality of interest; she must represent the best interests of both the students of the public school and the students of the nonpublic school. Although these interests are most often compatible, as the discussion above indicates, they regularly come into conflict, the most telling examples being where the school board has power to approve the course of instruction in the nonpublic school and where the board has to allocate limited resources between public and nonpublic school students (see 1985 Op Atty Gen [Inf] 105). In our view, these conflicts impede the public official's ability to make impartial decisions solely in the public interest. Thus, these conflicts render the two positions incompatible. Furthermore, in our view, the potential for conflict creates an appearance of impropriety. Even the appearance of impropriety must be avoided to maintain public confidence in the integrity of government.
We conclude that a public school board member may not also serve as a member of a school board of a nonpublic school within the school district.
* The relevant language provides:
 "Instruction given to a minor elsewhere than at a public school shall be at least substantially equivalent to the instruction given to minors of like age and attainments at the public schools of the city or district where the minor resides" (Education Law, § 3204[2]).
** We note that the constitutionality of section 3204(2) is currently being litigated in the United States District Court for the Northern District of New York (Blackwelder v Safnauer [86-CV-1208]).
*** "Congress shall make no law respecting an establishment of religion" (US Const, Amend I).
* This amount is equal to "twenty dollars plus a minimum lottery grant determined pursuant to subdivision four of section ninety-two-c of the State Finance Law multiplied by the number of children residing in such district and so enrolled on the first day of October of any school year" (Education Law, § 701[4]).