OPINION OF THE COURT
Peter E. Corning, J.
This is a proceeding brought under article 10 of the Family Court Act alleging that respondents are educationally neglecting their three minor children. The matter was tried before this court on March 24 and 25, 1988 and the court reserved decision.
FACTS
In February of 1986, respondents Randy and Alice Black-welder, residing in the Cato-Meridian School District, after becoming disenchanted with the public school educational system, decided to home-school their children who were subject to the compulsory Education Law § 3201 et seq.
On August 27, 1986, the respondents forwarded a letter to Superintendent Safnauer of the Cato-Meridian School District indicating their election to provide their children, Carmon and Katherine, with education at home. The Blackwelders submitted a list of course materials and closed with the admonition, "Our signatures on this statement of intent should in no way be construed as an attempt to seek State approval or as an attempt to place our children’s education under the jurisdiction of the State”.
By letter dated September 2, 1986, Superintendent Safnauer acknowledged the Blackwelder letter and advised respondents *778 that the home-school program "must be evaluated in determining equivalency” and "it will be necessary to arrange for an on-site visit”. The respondents, by letter dated September 12, 1986, denied petitioner’s request for an on-site evaluation.
The initial petition alleging educational neglect of Garmon Blackwelder, age 13, and Katherine Blackwelder, age 7, for the school year 1986-1987 was filed in May of 1987. Subsequently, petitioners filed a second petition alleging educational neglect for the 1987-1988 school year, this time adding Sarah Blackwelder, age 7, who had become subject to compulsory education after the date of the initial petition.
At trial; petitioner presented evidence that the Blackwelder children had not attended school between September 1986 and March 1988. Petitioner presented further evidence showing Superintendent Safnauer had requested respondents to allow a review of the equivalency of the education being afforded the children, but was refused.
Respondents presented two witnesses. Alice Blackwelder testified concerning the curriculum, procedures, activities and test results of the educational process utilized between September of 1986 and March of 1988. Dr. Moore, an expert, testified that, based upon an evaluation conducted between 2:00 a.m. and 9:30 a.m. on March 25, 1988, it was his opinion the children were receiving a substantially equivalent education. The basis for his decision was a review of the curriculum, interviews with the parents, and interviews with the children.
LAW
It is well-settled law in this jurisdiction that section 3205 (1) (a) of the Education Law requires children between the ages of 6 and 16 to, "attend upon full time instruction.” This requirement can be met by attendance in a nonpublic school if (1) instruction is provided by a competent teacher, (2) instruction is substantially equivalent to that provided in the local public schools and (3) a child attends such school for the same general time period as local public schools.
The Superintendent of Schools or District Superintendent of Schools is responsible for supervising the enforcement of this provision of law (see, Education Law § 3213 [1]), which this court interprets to mean that the Superintendent is responsible for ascertaining whether the child is receiving instruction substantially equivalent in time and quality to that provided in the public school.
*779 In Matter of Kilroy (121 Misc 2d 98, 102 [1983]) this court held that "Respondents have no absolute right to educate their children at home free from all State regulation or control; having chosen to utilize the statutory exceptions to public education, they must observe the reasonable requirements imposed upon home schooling by those charged with responsibility for the children’s proper home education.”
In the instant case, Superintendent Safnauer deemed it necessary to observe the premises and setting in which the classroom was conducted, as well as the interaction between Mrs. Blackwelder as teacher and the children as students. This requirement created the obstacle which brings this matter before the court. In Kilroy (supra, at 101) this court held: "The school setting is an obvious and critical factor affecting the nature and quality of education being afforded, and a factor that is established by common sense with no need of proof. More importantly, the law is clear that instruction must be afforded by a competent teacher. (Education Law, § 3204, subd 2.) In my opinion it is impossible to evaluate the competency of any teacher, whether in a public school or a home school, without actually observing that teacher in a classroom setting instructing pupils. This conclusion is so elemental and basic, that judicial knowledge can be taken of it and no proof is required.”
The respondents, having elected to utilize home instruction, have the duty to allow the home-study program to be evaluated by the Superintendent of Schools to determine if it is substantially equivalent. The Superintendent has the authority to make reasonable requests of the respondents in order to make such a determination. Evaluation of the curriculum, evaluation of the teacher’s credentials, on-site evaluation of the setting and teaching process, and periodic testing are reasonable requests.
In Matter of Crista H. (127 AD2d 997 [1987]) the Appellate Division, Fourth Department, held that the failure of the children therein to attend school makes out a prima facie case of educational neglect. The failure of the respondents to allow Superintendent Safnauer access to the home, thereby depriving him of the opportunity to evaluate respondents’ education program, creates a prima facie case of educational neglect requiring that the parents prove the children are receiving a substantially equivalent education.
In refusing to cooperate with the Superintendent, the re *780 spondents face further peril. Not only does the presumption of educational neglect arise, but the trier of facts should require an extremely high burden of proof since all he will hear is the respondents’ testimony concerning the educational process being employed. The court may also consider the parents’ failure to cooperate as a "consciousness of guilt”.
DISCUSSION
The action of the Blackwelders in refusing to cooperate with the District Superintendent is arbitrary, illogical and obstinate. The inconvenience of a limited and infrequent intrusion into the home for a few hours cannot justify thé position taken by the Blackwelders. The on-site observation would not constitute, in my opinion, an unlawful search nor does it violate tenets of the respondents’ religion. The argument by respondents that an on-site evaluation must be denied because it "would be construed as an attempt to seek state approval” falls of its own weight in light of Mrs. Blackwelder’s testimony that she voluntarily submitted curriculum, attendance sheets and agreed to stage' a mock school program at the school. There is no logical distinction between performing the latter acts and allowing an on-site observation.
We are left with respondents’ arbitrary decision to refuse a home visit which has resulted in time-consuming court proceedings for the Cayuga County Department of Social Services, the Cato-Meridian School District, the New York State Unified Court System and the Blackwelders. In addition, there has been apprehension and pressure placed upon the children and parents all in the name of a claimed principle which has no basis in law, religion, or logic.
However, that said, I do not believe that the failure to cooperate is, per se, educational neglect. The question before the court is not whether the respondents comply with the Superintendent’s requests, but whether the children are receiving a substantially equivalent education.*
*781 It is clear from the testimony that Mrs. Blackwelder has devoted her life and energy to the education of her children. This obvious devotion, love, and effort reflect that at least the younger Blackwelder children are receiving an extraordinary educational experience which is substantially equivalent to that which they would obtain in the public schools.
Whereas the court is convinced that the younger chilren (i.e., Katherine and Sarah) are receiving an excellent educational experience, the court is less convinced concerning Garmon. The lack of formal education by Mrs. Blackwelder will, in the court’s opinion, shortly take its toll in the quality of education afforded Garmon as her curriculum becomes more complex. Obviously, a reevaluation will have to be done as Garmon enters her ninth year and I would be less than honest if I did not indicate concern about Mrs. Blackwelder’s credentials in attempting to teach a complicated curriculum for which she has had no preparation.
CONCLUSION
After careful consideration, accepting the presumption of educational neglect and holding respondents to the highest degree of proof, I am unable to find educational neglect in connection with the Blackwelder children. Accordingly, the petitions alleging educational neglect between September 1986 and March 1988 are hereby dismissed.

 This court is keenly aware that petitioner is seeking direction as to how to intelligently enforce the provisions of the compulsory Education Law. Unfortunately, the posture of the present case, as presented, does not lend itself to a decision compelling respondents to cooperate with the reasonable requests of the Superintendent. Asking this court to find educational neglect, based upon the parents’ refusal to allow a home visit, is forcing a large square peg into a small round hole. The remedy sought does not lie in the determination of educational neglect, but rather in the procedural aspects of the action.
*781 For instance, petitioner could invoke the discovery provisions of the CPLR and request an order of the court to allow compulsory evaluation which would include a home visit. If respondents refused admission to the home, petitioner could then apply to the court for an order of preclusion which would prohibit the respondents from going forward with evidence necessary to sustain their burden of proof in connection with educational equivalency.