MICHAEL BRUNELLE & others[1] *vs.* LYNN PUBLIC SCHOOLS.[2]

Essex. November 5, 1998. - December 16, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*School and School Committee,* Superintendent of schools. *Education,* Home education. *Parent and Child,* Education.

Home visits are not presumptively essential to protect the State interest in the approval of a home education plan under G. L. c. 76, § 1, and may not be required without parental consent as a condition of approval of such a plan. [515-519]

CIVIL ACTION commenced in the Superior Court Department on June 6, 1995.

The case was heard by *Richard E. Welch III,* J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Michael P. Farris,* of the District of Columbia (*Scott Sommerville,* of Virginia, & *Robert G. Caprera* with him) for the plaintiffs.

*John C. Mihos* for the defendants.

*Nancy N. Hardenbergh,* amicus curiae, submitted a brief.

GREANEY, J. We granted the plaintiffs' application for direct appellate review in this case to consider the validity of a requirement of the school committee of Lynn that conditioned approval of the plaintiffs' home education plans on home visits by the superintendent or his representative to "observe and evaluate the [home] instructional process." A judge in the Superior Court considered cross motions for summary judgment, Mass.

---

[1] His wife, Virginia Brunelle, and Stephen and Lois J. Pustell who are husband and wife.

[2] The parties have designated the Lynn public schools as the defendant, noting that the schools act through the school committee of Lynn, the superintendent of schools, and other school officials and employees. We shall retain the same designation.

R. Civ. P. 56 (a) and (b), 365 Mass. 824 (1974), and granted the defendant's motion after deciding that the home visit requirement was valid. We conclude that the requirement is not essential to approval of the plaintiffs' home education plans. Accordingly, we vacate the judgment and order a declaration of the parties' rights reflecting our conclusion.

The material facts are not in dispute and may be summarized as follows. The plaintiffs, Michael and Virginia Brunelle, are married and are the parents of five school-aged children. The Brunelles moved to Lynn in 1993, and gave notice to school officials that they intended to educate their children at home. Mrs. Brunelle is certified to teach elementary education and Mr. Brunelle has a master's degree in Christian education.

The plaintiffs, Stephen and Lois J. Pustell, are married and are the parents of three school-aged children. The Pustells, residents of Lynn, notified school officials in 1991 that they intended to educate one of their daughters at home. Mrs. Pustell is certified to teach elementary education, and Mr. Pustell is certified to teach mathematics at the secondary school level.

In both the cases of the Brunelles and the Pustells, the school committee and other school officials have examined their home education proposals and are satisfied with the qualifications of the parents as teachers, the contents of the curricula and instructional materials to be used, the amount of time to be devoted to instruction, and the student evaluation plans. In addition to obtaining prior approval of these matters, the school committee also requires that parents who wish to educate their children at home "allow the Superintendent (or designee, i.e., the Principal) to periodically . . . observe and evaluate the instructional process and to verify that the Home Instruction Plan is being implemented as authorized by the Committee." The plaintiffs refused to consent to these observations and evaluations in their homes. They instituted this action asserting that the requirement violates G. L. c. 76, § 1, and certain provisions of the Massachusetts Constitution. The plaintiffs sought a declaration that the school committee's policy to require home visits violates their rights under Massachusetts law, and injunctive relief enforcing the declaration.[3]

General Laws c. 76, § 1, requires compulsory attendance in a

[3]The Pustells filed an action in the United States District Court for the District of Massachusetts challenging the school committee's home visit requirement on Federal constitutional grounds. A decision by the District

public day school or some other approved day school by children within specified ages, but provides that "such attendance shall not be required . . . of a child who is being otherwise instructed in a manner approved in advance by the superintendent or the school committee." The statutory exemption authorizes approved home education for children, and, in so doing, protects the basic constitutional right of parents to direct the education of their children. See *Care & Protection of Charles*, 399 Mass. 324, 334 (1987), and cases cited. See also *Curtis* v. *School Comm. of Falmouth*, 420 Mass. 749, 754 (1995), cert. denied, 516 U.S. 1067 (1996). This right is subject to the State's interest in seeing that children in home education programs receive an education. See *Care & Protection of Charles, supra* at 336.

We said in *Care & Protection of Charles* that "the approval of a home school proposal must not be conditioned on requirements that are not *essential* to the State interest in ensuring that 'all the children shall be educated,' " *id.* at 337, and that school officials "may enforce, through the approval process under G. L. c. 76, § 1, certain *reasonable* educational requirements similar to those required for public and private schools" (emphasis added). *Id.* at 336. We went on to suggest guidelines for approval of home education plans. We indicated that school officials could, among other matters, insist that required courses, as enumerated in G. L. c. 71, § 1, be taught, as well as any other subjects considered "expedient"; examine the competency of the teachers (usually parents); consider the length of the school year and the hours of instruction in each subject; insist that parents furnish school officials with access to textbooks, workbooks, and other instructional aids, as well as to lesson plans and teaching manuals; and employ periodic standardized testing or other means of evaluating the children's progress. See *id.* at 337-340. As to the need for home visits, we said the following: "With appropriate testing procedures or progress reports, there may be no need for periodic on-site visits or

Court upholding the constitutionality of the requirement was appealed, and the United States Court of Appeals for the First Circuit concluded that the Federal courts should abstain from deciding the Federal constitutional issues until the State courts had determined whether the home visit requirement was valid under State law. See *Pustell* v. *Lynn Pub. Schs.*, 18 F.3d 50, 53-55 (1st Cir. 1994). In view of this decision, the plaintiffs brought the present action, which is based exclusively on State law, and contains the plaintiffs' express "reserv[ation of] all claims under federal law for the Federal District Court."

observations of the [home] learning environment by school authority personnel. But see *Matter of Kilroy*, [121 Misc. 2d 98, 102 (N.Y. Fam. Ct. 1983)] (upholding requirement of on-site visits)." *Id.* at 340. This passage left unresolved whether home visits could be required in this type of case.

We agree with the plaintiffs that, with respect to the approval of home education plans for children to be taught by parents that satisfy other pertinent criteria, including those summarized above, a home visit is not presumptively essential to protection of the State's interest in seeing that children receive an education, and therefore, such visits may not be required as a condition to approval of the plaintiffs' plans. As would be expected, all fifty States allow for home education of children as an alternative to their attendance at a public or other day school. Thirty-four States (and the District of Columbia) have statutes or regulations that specifically acknowledge home education as a distinct category of private education.[4] The remaining sixteen States either include home schooling under a statute designed for church and private schools,[5] or, as is the case in Massachusetts, permit home education under their more general statutory schemes governing public education.[6] W.M. Gordon, Home Schooling 29 (1994).

An examination of the statutes and regulations throughout the

---

[4]See, e.g., Me. Rev. Stat. Ann. tit. 20-A, §§ 5001-A(3)(A)(3), 5021, 5022, 5023 (West 1993 & 1998 Supp.) (compulsory attendance in public schools required between the ages of seven and seventeen years; home instruction specifically recognized as an "equivalent instruction alternative"; approval of local school board and State commissioner required, opportunities for part-time enrollment in public school); N.H. Rev. Stat. Ann. c. 193-A (Michie Supp. 1997) (parents have the right to home educate their own children, must notify local or State official, and comply with minimum educational requirements; State has home education program and home education advisory council).

[5]See, e.g., Ill. Ann. Stat. c. 105, § 5/26-1(1) (West 1993 & Supp. 1998) (children attending private or parochial schools "where children are taught the branches of education taught to children of corresponding age and grade in the public schools, and where the instruction of the child in the branches of education is in the English language" not required to attend public school); Neb. Rev. Stat. §§ 79-1601—79-1606 (1996) (children attending private, denominational, or parochial schools who have courses of study for each grade that are "substantially the same" as public school offerings are exempt from public school compulsory attendance law).

[6]See, e.g., Conn. Gen. Stat. § 10-184 (1997) (parents with children between the ages of seven and sixteen years must send the child to local public school "unless the parent. . . is able to show that the child is elsewhere receiving

country discloses that the States have concluded that their interests can be satisfied if the home education plan under examination complies with a list of requirements which are similar to those described in *Care & Protection of Charles, supra*, including periodic assessment of the child's progress by means of standardized testing or other alternatives that measure aptitude and learning.[7] Only one State law that we can find requires home schoolers to submit to home visits by school officials, as a condition to approval of home education plans. That law is designed to regulate private, denominational, and parochial schools, and approval is based in part on "health and safety factors in buildings and grounds." Neb. Rev. Stat. §§ 79-1601(2), 79-1605 (1996). Ohio's guidelines prohibit school officials from conducting home visitations, Rhode Island does not allow school officials to require home visits as a precondition of home education plan approval, and North Carolina and New York have eliminated home visitations as conditions of approval. See W.M. Gordon, Home Schooling, *supra* at 34-35 & n.122; Kindstedt *vs.* East Greenwich School Comm., R.I. Comm'r of Educ. (Aug. 7, 1986); N.C. Gen. Stat. § 115C-564 (Michie 1997); N.Y. Comp. Codes R. & Regs. tit. 8, § 100.10(i)(3) (1995). In 1988, the New York State board of regents promulgated new regulations governing home instruction. These regulations eliminated home visits as a matter of course, a practice permitted by a lower New York court decision in *Matter of Kilroy, supra*, instead "authoriz[ing] such visits only after a family's home-schooling program has been placed on probation and the local superintendent has 'reasonable grounds' to believe that the program is not in compliance with state requirements." *Blackwelder* v. *Safnauer*, 866 F.2d 548, 551-552 (2d Cir. 1989).[8]

---

equivalent instruction"); N.J. Stat. Ann. § 18A:38-25 (West 1989 & Supp. 1998) (same).

[7]Thirty-nine States require parents to notify the State or the school district of their intent to home school their children. See W.M. Gordon, Home Schooling 29 (1994). Only six States require advance approval of education plans in addition to notification, and many require compliance with State time and curriculum mandates. See *id.*; Comment, The Constitutionality of State Home Schooling Statutes, 39 Vill. L. Rev. 1309, 1346 (1994). Many States focus on teacher qualifications, and those that group home schools with other private schools require teacher certification. See *id.* Almost all States require periodic assessment of home schooled students' academic progress. *Id.*

[8]Thus, the decision by the Federal District Court in *Blackwelder* v. *Safnauer*,

General Laws c. 76, § 1, does not explicitly, or by implication, contain a requirement for home visits, but gives local school officials discretion to develop home school approval guidelines. We cannot say whether home visits are commonly required by local school officials, but view such a requirement carefully in light of constitutional considerations.

The school committee's requirement of home visits is explained in the "Home Instruction — Regulations" as being necessary to "allow the Superintendent (or designee, i.e., the Principal) to periodically . . . observe and evaluate the instructional process and to verify that the Home Instruction Plan is being implemented as authorized by the Committee." The home visit policy was justified by the superintendent of schools in his deposition testimony in the following manner:

> "I believe when we adopted the policy I recommended to the School Committee that it was essential that we visit the homes to make sure that the plan is being implemented, that there is an instructional space available, that there are materials present, that there was a schedule that is followed, and my understanding when I recommended it was that we were really concerned about the process and outcomes, not just the outcomes, but the process, too."

These reasons have to be measured against the nature of the home education involved in the plaintiffs' case (namely, parents teaching their children in their own home) which in certain important ways can never be the equivalent of in-school education. For example, at home, there are no other students (except perhaps siblings), no classrooms, and no rigid schedules. Parents who teach at home stand in a very different relationship to their children than do teachers to a class full of other peoples' children. Teaching methods may be less formalized, but in the home setting may be more effective than those used in the classroom because the teacher-to-student ratio is maximized, a factor permitting close communication and monitoring on an individualized basis. It is obvious from these differences that, while the State can insist that the child's education be moved along in a way which can be objectively measured, it cannot apply institutional standards to this noninstitutionalized setting.

689 F. Supp. 106 (N.D.N.Y. 1988), which upheld the requirement of home visits in New York, is similar to the decision in *Matter of Kilroy*, 121 Misc. 2d 98 (N.Y. Fam. Ct. 1983). The matter is now governed by the regulations.

Furthermore, a requirement of home visits may call into play issues of family privacy in seeking to keep the home free of unwarranted intrusion.

We are not persuaded that the reasons given by the superintendent, although articulated by him in good faith, are sufficient to justify home visits as an essential condition to the home education plans in question. While following a schedule may be an important consideration in a public school where preexisting schedules need to be maintained and coordinated, the perception and use of time in a home school are different. The plaintiffs can observe and accommodate variations (from child to child, subject to subject, day to day) in the learning process and teach through a process that paces each student. The results of their teaching programs can be adequately verified through testing without the need to visit the home to see if a formal schedule is being followed. Additionally, the school committee, if desired, can ask the plaintiffs to submit periodic reports on the progress of each child's education in order to indicate what subjects, areas, and materials have been learned and what is planned for the next reporting period.

Similarly, it is not essential to visit the plaintiffs' homes to see if "there are materials present." The plaintiffs can be asked to identify the teaching materials that will be used, and even to show them, if appropriate, to school officials. It should not be overlooked in this regard, that some of the most effective curricular materials that the plaintiffs may use may not be tangible. For example, travel, community service, visits to educationally enriching facilities and places, and meeting with various resource people, can provide important learning experiences apart from the four corners of a text or workbook.

We also do not consider essential the perceived need to verify that "there is an instructional space available" in the plaintiffs' homes. The entire home is apparently in each case available to the plaintiffs' children, and whether their educational plans are appropriate should not depend on the size of their kitchen tables or their students' desks. We doubt that parents like the plaintiffs, who are so committed to home education that they are willing to forgo the public schools, and devote substantial time and energy to teaching their children, will let the children's progress suffer for lack of adequate instructional space.

Both the United States Supreme Court and this court have emphasized, in connection with the protected right of parents to

raise their children, that "government may not intrude unnecessarily on familial privacy." *Curtis* v. *School Comm. of Falmouth*, 420 Mass. 749, 756 & n.8 (1995), and cases cited. This concern (as well as others) dictates, as we said in the *Curtis* case, that home education proposals can be made subject only to essential and reasonable requirements. The home visits sought to be imposed on the education proposals of the plaintiffs are not essential. We express no opinion on whether home visits can be required (as appears to be the case in New York during any period of probation) if a child is not making satisfactory progress under a home education plan, if a home is used to educate children from other families, or if other circumstances make such a requirement essential, and reasonable standards are formulated to enforce the requirement.

Because our decision rests on G. L. c. 76, § 1, as interpreted in *Care & Protection of Charles*, 399 Mass. 324 (1987), there is no need to consider the several arguments made by the plaintiffs under the Massachusetts Constitution. We also need not address their argument that the requirement is a disguised effort to perform unwarranted teacher evaluations. The judgment is vacated. A new judgment is to be entered declaring that the school committee of Lynn and other school officials cannot, in the absence of consent, require home visits, as a condition to the approval of the plaintiffs' home education plans, and that, if those plans continue to comply with the standards for home education, they are to be approved.[9]

*So ordered.*

---

[9]There is no reason to order injunctive relief because it is clear that the school committee and school officials will comply with the terms of the declaration.