CARE AND PROTECTION OF IVAN & another.[1]

No. 98-P-2166.

Middlesex. May 14, 1999. - October 14, 1999.

Present: JACOBS, GILLERMAN, & GREENBERG, JJ.

*School and School Committee,* Care and protection of minor. *Constitutional Law,* Education. *Parent and Child,* Care and protection of minor, Education.

This court concluded that parents' refusal to provide a school committee with the essentials of their home schooling educational plan and failure to allow for any evaluation of their children's educational attainments was a violation of the mandate of *Care and Protection of Charles,* 399 Mass. 324, 337-340 (1987), and that a District Court judge correctly concluded that the children were in need of care and protection and appropriately committed them temporarily to the legal custody of the Department of Social Services. [89-91]

PETITION filed in the Waltham Division of the District Court Department on June 2, 1997.

The case was heard by *Margaret S. Fearey,* J.

The parents, pro se.

*Kristyn M. Snyer* for the children.

*Jeannette A. McCarthy* for School Committee of Waltham.

*Susan Mojica,* pro se, amicus curiae, submitted a brief.

GREENBERG, J. The parents of two minor children protest that the city of Waltham school committee's (committee) demand that they provide information concerning the home schooling of their children deprives them of protection under art. 12 of the Massachusetts Declaration of Rights. We conclude that the parents' refusal to provide the committee with the bare essentials of their educational plan and to allow for any evaluation of their children's educational attainments transgresses the mandate of *Care and Protection of Charles,* 399 Mass. 324,

_____

[1] A younger sister, Olympia: we use pseudonyms, as is our custom.

337-340 (1987), and affirm the decision of a District Court judge that the children are in need of care and protection and committing them temporarily to the Department of Social Services (department).

This, in outline, is the setting of the dispute. On June 2, 1997, on allegations that two children, who were eight and ten years of age, were neither enrolled in a school nor had approved home schooling plans on file with the committee, the committee initiated this care and protection petition pursuant to G. L. c. 119, § 24(d).[2] A trial was held on January 21, 1998, with additional testimony taken on two separate occasions through July 10, 1998. It is not necessary to chronicle in detail the history of missed goals and failed performance of the parents once the committee intervened in the case. It is only necessary to state that by the end of almost two years of cajoling the parents to show that the children's educational needs were being met, the judge found that the committee "has been effectively prevented from evaluating whether or not educational neglect exists, much less proving its existence, by the [p]arents' failure to provide any information regarding the [c]hildren's educational level, their mastery of basic skills or the methods being used to educate them."

Noting the recalcitrance of the parents to produce "a minimally adequate educational plan" or to permit any sort of verification of the children's educational progress, despite numerous good faith efforts by the committee to accommodate them, the judge, on July 29, 1998, ordered the parents to file educational plans, obtain an independent professional evaluation of each child's educational level, verify whether the children had acquired age-appropriate knowledge and skills, and to file such plans and evaluations by September 8, 1998. If the parents neither fully complied nor enrolled the children in the Waltham public schools or a private school approved by the committee, temporary legal custody of the children would be transferred to the department.

The parents did not comply, and the judge, on October 7, 1998, adjudicated the children in need of care and protection

---

[2]The committee relies solely upon § 24(d) of the statute; specifically, that a petition shall issue if "any person" alleges that a child within the jurisdiction of the court and under the age of eighteen "[has] parents, guardian or custodian . . . unwilling, incompetent or unavailable to provide [physical or educational] care, discipline or attention."

and ordered temporary legal custody transferred to the department. The children remain in the physical custody of the parents. It is that adjudication order, based upon the July 29, 1998, decision, that forms the basis of this appeal.

The parents' principal contention is that the committee's process of approval of their home schooling activity runs counter to their "learner-led" approach to education, which they claim permits them to facilitate the child's exploration of his or her own interests. As the judge indicates in her findings on this point, "This educational philosophy militates against the development of a concrete 'curriculum.'" At the same time, the judge found that the committee had no objection to the "[p]arents using this method of education," only that they had to provide the school committee with a home schooling plan that was sufficiently detailed to allow the committee to assess the children's educational level and their progress on the parents' home schooling program. It is settled that "the approval process, under G. L. c. 76, § 1, . . . must not be conditioned on requirements that are not essential to the State interest in insuring that 'all the children shall be educated.'" *Care and Protection of Charles*, 399 Mass. at 337. However, prior approval of the superintendent or committee is a prerequisite to removal of children from school and to the commencement of a home schooling program. *Commonwealth* v. *Renfrew*, 332 Mass. 492, 494 (1950) (interpreting a predecessor statute). *Care and Protection of Charles*, *supra* at 330.

In the *Charles* case, *supra* at 337-340, the court listed some of the legitimate educational conditions which a school committee, pursuant to G. L. c. 76, § 1, may impose on a home school proposal "without infringing on the liberty interests of the parents under the Fourteenth Amendment [to the United States Constitution]." Pertinent to this case are two: (1) for the parents to make available any proposed education plan for the child and (2) to permit any testing or evaluation of the child. Contrast *Brunelle* v. *Lynn Pub. Schools*, 428 Mass. 512, 518-519 (1998) (requirement of home visits is not essential to home schooling). The parents' brief argues that the "right [of parents] to direct the education . . . of their own children" is protected by art. 1 of the Massachusetts Declaration of Rights and pt. 2, c. 5, § 2, of the Massachusetts Constitution and that their "unalienable rights in privacy and the rearing of their children" may not be infringed.

The only suggestion in the record before us of the parents' specific objections to the committee's stance is that contained in the judge's findings which state: "The school committee also requires that parents submit progress reports, which may include portfolios or work samples, either quarterly or semi-annually . . . . [H]ome schoolers must participate in certain standardized testing during grades 3, 4, 8 and 10." There was no testimony or other evidence suggesting the nature or extent of these tests. In any event, the judge found that "[t]he parents . . . not only refuse even to submit the [c]hildren to standardized testing; they also refuse to provide a portfolio of the [c]hildren's work for review by the [s]chool [c]ommittee, viewing that work as the [c]hildren's private property."

When parents remove their children from the public school system and decide to educate them in a setting which comports with the parents' philosophical, moral, or religious convictions, prior approval of such plans may clash with parental choice. In that respect, decisions of the United States Supreme Court have recognized a degree of autonomy afforded to parents with respect to the education of their children. See *Meyer* v. *Nebraska*, 262 U.S. 390 (1923) (States may not forbid foreign language instruction of school children); *Pierce* v. *Society of Sisters*, 268 U.S. 510 (1925) (States may not prohibit private school instruction as an alternative to compulsory education in public schools); *Farrington* v. *Tokushige*, 273 U.S. 284 (1927) (government could not pervasively regulate foreign language schools in which students received instruction in the Japanese language as supplement to English).

In enacting G. L. c. 76, the Legislature was cognizant of these decisions which addressed parental autonomy in other contexts. The statute, therefore, authorizes school committees to use somewhat elastic standards in evaluating private schools. As appears in the last sentence of the first paragraph of § 1: "[S]chool committees shall approve a private school when satisfied that the instruction in all the studies required by law equals in thoroughness and efficiency, and in the progress made therein, [as] in the public schools in the same town." The *Charles* case extended the same criteria to evaluate home education programs. *Care and Protection of Charles*, 399 Mass. at 331. The *Charles* court also suggested that school authorities may jettison standardized testing for less orthodox means of evaluating the progress of the children, "such as periodic

progress reports or dated work samples, subject to the approval of the parents." *Id.* at 340. In the present case, it was always open to the parents to work out an accommodation of their interests along the lines suggested by school authorities and to resolve the matter by agreement. However, the judge found that the parents never filed educational plans that were minimally adequate within the guidelines set forth in *Charles*.[3] The record suggests that the parents were unwilling to permit any verification of the children's educational progress by the committee.

Perhaps more to the point, the adjudication which had been entered in this case was a grant of temporary legal custody to the department, but only after the judge extended the parents a final opportunity to comply with her order to file an educational plan with the committee and obtain an independent evaluation of the children's knowledge and skills. Unlike the circumstances in the *Charles* case, the parents in this case have had the benefit of a decision by the judge which sets forth a reasonable course of action which would not jeopardize the learning capacity of their children and recognizes their right to school their children in their home.

We think, therefore, that the judge properly relied on G. L. c. 76, § 1, in determining that the children would be, under G. L. c. 119, §§ 24 and 26, in need of care and protection if their parents failed to comply with the judge's mandates with respect to their educational care. The order of adjudication of commitment to temporary custody is affirmed.

*So ordered.*

---

[3]The situation here, to be sure, was predicted in Professor Ira C. Lupu's commentary on *Charles*, which discussed the inherent difficulties of the court's resolution of that case. Lupu, Home Education, Religious Liberty and the Separation of Powers, 67 B.U. L. Rev. 971, 980-985 (1987).