## CARE AND PROTECTION OF EMILY.[1]

No. 02-P-1636.

Middlesex. May 6, 2003. - May 22, 2003.

Present: BROWN, DREBEN, & DOERFER, JJ.

*Minor,* Care and protection. *Parent and Child,* Care and protection of minor, Education. *Child Neglect. Practice, Civil,* Care and protection proceeding.

Where a child on whose behalf the Department of Social Services had filed a care and protection petition was no longer required to attend school by reason of G. L. c. 76, § 1, a judge of the Juvenile Court erred in depriving her of her relationship with her mother solely on the ground that it might be better for her to continue her education beyond the age of sixteen. [192-194]

PETITION filed in the juvenile session of the Woburn Division of the District Court Department on January 28, 1999.

The case was heard by *Gwendolyn R. Tyre,* J.

*Hilda I. Lopez* for the mother.

*Claudia Leis Bolgen* for the child.

*Maria Makredes,* Assistant Attorney General, for Department of Social Services.

DREBEN, J. This is an appeal by both a mother and her seventeen year old daughter[2] from a judgment pursuant to a review and redetermination hearing under G. L. c. 119, § 26. The question presented is whether a mother may be found unfit to care for a sixteen year old daughter on the ground that she failed to provide for her daughter's continued attendance at school. A judge of the Juvenile Court, while finding that the daughter, Emily, wanted to be reunified with her family, concluded that the mother "has failed to demonstrate changes in her parenting skills to convince the Court to alter its decision regarding [Emily's] need of care and protection."

[1] A fictitious name.

[2] Her birthday is September 18, 1985.

The crucial finding was as follows:

"While the Court is aware that [Emily] will be 17-years-old in September and is allowed by law to quit school at 16 years of age, the Court does not believe that leaving school would serve her best interest. [Emily] would better function as a productive member of society upon completion of her formal high school education. The Court finds that the reunification of [Emily] with her mother would not support [Emily's] continued attendance in school."[3]

We reverse.

Our narrative relies on the findings of the judge, supplemented by a stipulation, and by minor additions from the testimony of the parties. There is basically no dispute as to the facts.

Emily came to the attention of the Department of Social Services (DSS) in 1998 through her mother's request for voluntary services. Despite the assistance of DSS, Emily did not attend school on a consistent basis, and on January 28, 1999, DSS filed a care and protection petition on her behalf alleging educational neglect by the mother.[4] By stipulation of the parties, Emily was placed in the temporary custody of DSS, and after a diagnostic placement, she was placed in a residential school. In September, 2000, by reason of an additional stipulation of the parties, Emily continued to live in the facility and was adjudicated in need of care and protection pursuant to G. L. c. 119, § 26. The stipulation set forth the intention of the parties to have a review and redetermination hearing six months after the adoption and entry of the stipulation as an order of the court.

Emily ran away from the residential facility four times. In August, 2001, she was returned home, although still in the

---

[3]The judge also found that the mother failed to secure proper educational and therapeutic supports for Emily. The mother failed because the therapist she found for Emily would not accept payment from the mother's health insurance plan provider. One of Emily's mental health issues included her allegations of sexual abuse. In the mother's motion for review and redetermination, filed on December 17, 2001, she alleges Emily was raped while in the custody of DSS. DSS does not argue, and the judge did not find, that the mother's failure with respect to the therapist had significance other than not providing therapeutic support for Emily's continuing to attend school.

[4]The father is not involved in this case.

custody of DSS. She reached her sixteenth birthday on September 18, 2001.

In the fall of 2001, Emily missed twenty-nine out of forty-seven days of school due to "recurring head lice, back aches and other multiple, somatic complaints." She was again removed from her mother's home to a residential facility where she is at present. She comes home on weekends. She does not feel safe at the residential facility, wants to come home, and threatens to run away if she cannot return home.

Relying on *Custody of a Minor (No. 2)*, 22 Mass. App. Ct. 91, 94 (1986), DSS argues that there has been no change since the previous order (the September, 2000, stipulation) and, therefore, the judge acted within her discretion in deciding that Emily remains a child in need of care and protection. The only change is that Emily is over sixteen years of age, a fact that DSS considers of "no consequence," citing to G. L. c. 119, § 24,[5] and arguing that this child at seventeen years is no less in need of care and protection than at the time of the original adjudication.

As in *Care & Protection of Charles*, 399 Mass. 324, 325-326 (1987), the decision that Emily was still in need of care and protection was based on her educational needs. See note 3, *supra*. In *Charles*, the issue involved the rights of parents to educate their children at home. *Id.* at 325. See *Care & Protection of Ivan*, 48 Mass. App. Ct. 87 (1999). As stated in *Charles*, *supra* at 329:

> "General Laws c. 76, § 1, provides the standards by which the judge is to determine [under G. L. c. 119, § 24,] whether a child is 'without . . . necessary and proper . . . educational care and discipline' and whether the 'parents . . . are unwilling . . . or unavailable to provide any such care, discipline or attention . . . .' "

---

[5]The relevant portion of G. L. c. 119, § 24, provides as follows:

"The divisions of the juvenile court department, upon the petition under oath of a person alleging on behalf of a child under the age of 18 within the jurisdiction of the court that the child: (a) is without necessary and proper physical or educational care and discipline . . . ."

The court went on to say, implying a constitutional requirement, "Without such an implied reference under G. L. c. 119, § 24, to G. L. c. 76, § 1, the judge would be without guidance in determining what constitutes 'necessary and proper . . . educational care and discipline.' " *Charles, supra* at 329-330.

The standard for this case, too, is supplied by St. 1965, c. 741, which supplements G. L. c. 76, § 1. Chapter 741 provides that "[p]ending the establishment of . . . [a] maximum age[] for school attendance by the board of education, as required by section one of chapter seventy-six of the General Laws, said age[] shall be . . . sixteen."

In *Charles, supra* at 326, the court was faced with the question of accommodating the parents' constitutional rights in directing the education of their children with the governmental interest in the education of its citizens. Here, we are concerned with interests at least as important — the mother's fundamental right of custody of her daughter, see *Custody of Two Minors*, 396 Mass. 610, 617 (1986), and cases cited, and her daughter's interest in the relationship with her family. See *Care & Protection of Robert*, 408 Mass. 52, 59 (1990).

The legislative standard of G. L. c. 76, § 1, establishing the maximum age during which children are required to attend school, accommodates the governmental interest in the compulsory education of citizens. As in *Charles, supra* at 329-330, we consider that standard to be the appropriate guide implicit in G. L. c. 119, § 24, for determining what constitutes "necessary and proper . . . educational care and discipline." Since Emily is no longer required to attend school by reason of G. L. c. 76, § 1, the State may not deprive her of her relationship with her mother solely on the ground that it might be better for her to continue her education beyond the age of sixteen; her mother, as well, may not be deprived of Emily's custody solely because in her mother's house, Emily may decide not to continue to attend school.[6]

Accordingly, the judgment determining Emily in need of care

---

[6]While not relevant to our decision, we note that there are suggestions in the record that both Emily and her mother have indicated a desire for Emily to continue her education upon return to her home. DSS, of course, may continue to provide services to encourage this result.

and protection is reversed, a new judgment is to enter vacating DSS's custody of Emily and ordering the return of Emily to the custody of her mother.

*So ordered.*